JAMES C. STIMPSON *v*. HORACE PIERCE.

*Sheriff and Deputy.   Receiptor.*

Where an officer takes a receipt for property attached, and afterwards gives up the receipt and takes the property into his possession, he stands in respect to it the same as though he had never taken a receipt for it.

Where property is attached on writs in favor of different creditors, and judgments are recovered in all the cases but one, and while that is pending executions are issued and the property sold thereon, and a surplus remains after satisfying such executions, the officer would continue to hold this surplus by virtue of the attachment in the suit in which the judgment was not yet recovered, and would be obliged to deliver it up on demand under execution on the judgment in said suit if one be obtained, and if not, to restore it to the debtor; and for a faithful discharge of this duty by a deputy holding such surplus the sheriff is responsible.

And the sheriff is also responsible for the proceeds of property attached by his deputy and receipted, and which is then disposed of under an arrangement between the creditors and the debtor, but the proceeds being paid over to the deputy. And the responsibility of the sheriff, both in regard to said surplus and said proceeds, is unaffected by the fact that they come into the hands of the deputy after the sheriff goes out of office and after the deputy becomes a deputy of his successor.

The sheriff is also responsible for the proceeds of property attached by his deputy, and by direction of the parties sold on credit, where such proceeds come into the hands of the deputy before judgment is recovered.

And is responsible for the neglect of his deputy to take proper care of attached property after he ceased to be his deputy and became the deputy of his successor.

ACTION on the case for the default of one Amory Parker, the defendant's deputy.   Plea, the general issue.   Trial by jury, June term, Orleans county, 1869, STEELE, J., presiding.

It appeared in evidence upon the trial that the defendant was sheriff of Orleans county from December 1st, 1864, to December 1st, 1865, and that one Amory Parker was the defendant's deputy during the same time, and that James A. Kendall was sheriff of said county from December 1st, 1865, to December 1st, 1866, and that Amory Parker was his deputy during the same time : that the said Amory Parker, as the defendant's deputy, on the 30th day of October, 1865, attached a large amount of personal property at Newport, in said Orleans county, on several writs against A. W. Putnam & Co., of which firm one A. W. Putnam was sole partner, one of which writs was in favor of this plaintiff, and among the property so attached were three horses, two wagons, two scows, a quantity of lime, brick, lumber, staves, hoop-poles and

Stimpson *v.* Pierce.

hemlock bark; that said lime was in process of manufacture at a lime-kiln owned by said A. W. Putnam, and situated in said Newport, on the shore of Lake Memphremagog, and that said scows were used upon said lake to freight lime-rock for said kiln and to carry other freight on said lake, and that said lumber, staves and hoop-poles were procured for the purpose of being manufactured into casks to contain the lime so manufactured at said kiln, and that said wagons and horses were used to do the freighting of said kiln.

It further appeared that the said plaintiff entered his suit in the Orleans county court, and at the June term, 1866, procured judgment against A. W. Putnam & Co., and that on the 2d day of August, 1866, the damages in said writ were assessed at $1041.16, and costs of the plaintiff were taxed at $22.41, and that on the 18th day of August, 1866, the plaintiff in that suit took out an execution against the said A. W. Putnam & Co. for said damages and costs and immediately placed the same in the hands of James A. Kendall, who was then sheriff of Orleans county, for collection; that soon after the attachment of the property of A. W. Putnam & Co. was made by Parker as before stated, said property was all receipted by the plaintiff in this case and was all put into his hands, that it remained there about one week when it was returned to Parker and an arrangement entered into between A. W. Putnam & Co. and all the attaching creditors, whereby one S. D. Pender was to receipt said property, and one A. W. Brown take the same and proceed to complete the manufacture of such lime as was then in process of manufacture, and manufacture such lime-rock as A. W. Putnam & Co. then had on hand into lime, and sell the same and pay the proceeds, after deducting expenses, over to said Parker. Pender thereupon did receipt said property and Brown proceeded to perform his part of said arrangement. It further appeared that some of the first writs against A. W. Putnam & Co., which were served by Parker by attaching property as aforesaid, were returnable before justices of the peace and judgments were procured thereon against A. W. Putnam & Co., and executions taken out and placed in the hands of Parker to be by him levied and collected; that said Parker advertised and sold

three horses upon said executions some time in December, 1865, at and for the sum of $392, and some of the testimony tended to show that one of said horses was sold to this plaintiff for the sum of $181, and was sold upon credit by direction of the attorney for the creditors in said executions and attorney for this plaintiff in his said suit against A. W. Putnam & Co., and that said horse was not paid for until April 6th, 1866, at which time the plaintiff in this suit paid Parker for said horse; and the rest of the testimony on this subject tended to show that no agreement to give time was made at the time of the sale of said horse, and none was desired by the plaintiff, but that a delay was in fact given until said April 6th, 1866, and that Parker in delaying acted under advice of the plaintiff's counsel given a few days after the sale.

It also appeared that said Brown, having completed his part of the aforesaid arrangement, on the 3d day of February, 1866, paid over to Parker the sum of $633.35 as the net proceeds of the transaction; that some time in May, 1866, the property receipted by Pender, or such portions of it as had not been used by Brown and by him converted into cash and accounted for, was surrendered up to Parker, and that soon soon afterwards said scows were receipted to Parker by one Lucius Robinson, which receipt Parker took without the consent and against the express direction of the plaintiff, who desired Parker to not again let the scows be receipted. Robinson took said scows and used them from time to time during the summer of 1866 upon Lake Memphremagog.

It also appeared that during the summer of 1866, the said two wagons were used to some extent by one Venio to draw lumber for Stimpson & Co., of Newport, of which firm this plaintiff was a member, and to draw lime for A. W. Putnam; that after this plaintiff had taken out his execution against A. W. Putnam & Co. and placed it in the hands of said James A. Kendall, the said Kendall demanded of Parker said scows and other personal property not previously disposed of, and also all money in his hands not before accounted for, and that Parker delivered up the property but did not deliver up any money. It also appeared that Kendall advertised said property for sale and sold the same.

The plaintiff .claimed that Parker had not accounted for all money received from the sale of said horses, nor for all the money received of Brown, and that said scows and wagons had been improperly taken care of while in his hands, and had been thereby damaged and worn and depreciated in value, and claimed to recover of the defendant the amount due on the plaintiff's execution against A. W. Putnam & Co., and claimed there was due on said execution $431.74.

The defendant claimed he was not in any way liable to the plaintiff for the money received for the horses, or for the money received of Brown by his deputy, Parker, or for any neglect by Parker in not taking proper care of said wagons and scows, for the following reasons, viz.:

1. Because this property had all been twice receipted, once to this plaintiff, and once to S. D. Pender, by direction of this plaintiff, and that said property having once passed out of Parker's hands by the direction and consent of this plaintiff, the defendant was no longer liable therefor and that his liability therefor having once been extinguished it could not be again revived.

2. Because when the property was returned to Parker by Pender, in May, 1866, Parker was the deputy of James A. Kendall, and was not the deputy of this defendant.

3. Because the money paid to Parker by Brown arose from a private sale of property which neither this defendant nor Parker, his deputy, in any way controlled, but which was an arrangement between the creditors and debtors and was in no wise such a sale as the law directs or permits officers to make, and that this plaintiff having once assumed to control the sale of such property this defendant was no longer liable for the property or for the proceeds of the sale thereof.

4. Because his deputy, Parker, had accounted to the creditors of A. W. Putnam & Co. for the proceeds of the sales of the two horses which were sold for cash, and this defendant is not liable to account to the plaintiff for money paid to his deputy Parker for property sold by him on credit by direction of the plaintiff.

5. Because at the time the horses were sold by Parker, and the money paid over to Parker by Brown, Parker was the deputy of James A. Kendall, and was not the deputy of this defendant.

6. Because the neglect of Parker to take proper care of the wagons and scows was at a time when Parker was the deputy of James A. Kendall and was not the deputy of this defendant.

The defendent further claimed that the plaintiff could not recover for damages to the scows, because previous to the sale of them said Lucius Robinson, who was then the receiptor of them, and responsible to Parker for all damage done to them, had heard the plaintiff was going to claim damages for injuries to them, and on the day of the sale of them, and before he surrendered them up on his receipt, went to the plaintiff and told him what he had heard, and also told him if there was any damage he was responsible for it, and that if any damage was claimed he should not return the scows upon his receipt, but would pay the price named in the receipt and keep them, and that thereupon the plaintiff informed Robinson he should not claim damages upon them, and that Robinson then surrendered them upon his receipt and the same were sold by Kendall.

It appeared that Parker's fees in making the attachment and sale and keeping the property had never been settled or fully paid. It was agreed between him and Allen, the attorney who employed him to do this business, that Allen should only be responsible to him for fees when he, Allen, could collect them. There was no proof that he had collected them, but he had charged them to parties who were unquestionably good. Allen and Parker had done business with each other for years, had never settled, and each claims a balance in his own favor. The court ruled that Parker had a right to retain the money in his hands sufficient to pay his fees, and left to the jury only the question of how much fees was due him.

The court required the jury to render a special verdict, finding separately on each material fact in dispute as to each element of damage claimed by the plaintiff. By this verdict, under the charge of the court, it was established that there remains, including interest, of the avails of the vendue sale of said three horses, in Parker's hands the sum of $136.46 ; of the Brown money, that is, of the said funds paid over to Parker by Brown, the sum of $117. The plaintiff did not claim that Parker had received any money that he had failed to account for except what he had received from these two sources. The jury also found that the wear and damage to the wagons, for which Parker was responsible, that is, under the charge of the court, the wear and damage by use or abuse while the wagons were in Parker's hands and not in custody of a receiptor by the plaintiff's consent, was $11.70, and that the wear and damage to the barges, under the same rules, which would be while they were in said Lucius Robinson's hands, was $70.20.

The plaintiff did not claim that Parker had been guilty of any neglect in his care of the property, for which this defendant could

be held except with respect to his care of said wagons and barges.

The jury also found that Parker's fees and reasonable charges on account of the property attached were $39.96, and that the plaintiff's said execution against Putnam & Co. remains unsatisfied in the sum of $224.20, the plaintiff's counsel, Mr. Allen, having received payment of all of the execution except this. The jury also found that Robinson, the receiptor, did surrender the barges to the officer to be sold on the plaintiff's agreeing to claim no damage on them, as the defendant's evidence tended to prove. These facts being established by special verdict, the court ruled *pro forma* that the plaintiff was entitled to recover the amount due on his execution and directed a verdict to be made up in that sum, and rendered judgment *pro forma* on the verdict for the plaintiff to recover said sum of $224.20 and costs, to which the defendant excepted.

The officer's fees, which the jury found due Parker on account of the property attached, were not limited to the fees taxed upon the plaintiff's writ against said Putnam or Putnam & Co., but included the fees taxed on other writs on which this property was attached and sold.

*W. D. Crane*, for the defendant.

*J. T. Allen* and *R. C. Benton*, for the plaintiff.

The opinion of the court was delivered by

PIERPOINT, C. J. It appears, from the exceptions, that from December 1, 1864, to December 1, 1865, the defendant was the sheriff of Orleans county, and that during the same period Amory Parker was his deputy; and that on the 30th day of October, 1865, said Parker, as such deputy, attached a large amount of personal property, on several writs against A. W. Putnam & Co., one of which writs was in favor of this plaintiff. Soon after the attachment, Parker took the plaintiff's receipt for this property, and delivered the possession to him. In about a week the plaintiff returned all of the said property to Parker, who received it. This left Parker in the same situation, in respect to this property, as though he had never taken any receipt for it. A portion of this property consisted of lime and materials for lime in the process of manufacture. The rest of the property had been used, or

procured to be used, by the debtor in the business of manufacturing, packing and transporting the lime to market. After the property was so returned to Parker, the creditors and the debtor entered into an arrangement by which one S. D. Pender was to receipt the property to Parker, and put it into the hands of one Brown, who was to complete the manufacture of such materials into lime, sell the same and pay the net proceeds over to Parker. Pender thereupon gave his receipt to Parker, took the property, put it into Brown's hands, who proceeded to carry out the arrangement. This left Parker as the deputy of the defendant, with Pender's receipt for the property in his hands. What then became of the property was of no importance to Parker so long as Pender was able to respond to his receipt. And the fact that this was done under an arrangement between the creditors and the debtor, we think is not material to any issue presented by the facts of this case. Things remained in this condition, so far as Parker was concerned, until the 1st of December, 1865, when the defendant Pierce went out of office, and Kendall became sheriff of the county, and he also appointed Parker his deputy. In the meantime some of the creditors of Putnam & Co., who brought suits before justices of the peace, had obtained judgments, and had put their executions into the hands of said Parker. At what precise time he took the executions does not appear, but he took thereon three horses, a part of the property taken by him on the writs aforesaid. And, in December, 1865, while said Kendall was sheriff, as aforesaid, and said Parker, his deputy, advertised and sold said horses on said executions, and after applying so much of the proceeds as was necessary to satisfy such executions and costs, there remained in his hands a surplus of $136.46 ; and the question now is in what capacity did he hold that surplus, as the deputy of Pierce or of Kendall ? These horses, as well as the other property, were attached by Parker on the suit in favor of the plaintiff, and at the time the horses were sold, and when the said surplus came into Parker's hands, this plaintiff had not obtained judgment in his suit. When Parker took these horses from Pender, the receiptor, and advertised them for sale, the receiptor was discharged so far, and Parker then held the property just as

he would have held it if it had not been receipted, but had kept it in his own hands all the time after he attached it ; in that case, so much of the property as was required to pay the executions would be appropriated to that end, and the remainder he would hold by virtue of his original attachment. His authority under the executions would give him no control over the surplus, except to pay it over to the defendant therein. After the executions were discharged, he held the surplus substantially the same as if he had never had the executions. It stood as property in his hands, which he had attached on this plaintiff's writ, and which he was holding to respond the judgment obtained in that suit if the plaintiff succeeded in obtaining one. In this he acts as the deputy of Pierce, and not of Kendall. He holds it by virtue of the authority conferred by the original attachment made as the deputy of Pierce. This casts upon him the duty of keeping the property, and delivering it up on demand, under the execution on the judgment, if one be obtained, and if not, to restore it to the debtor. For the faithful discharge of this duty the sheriff is responsible, whether the deputy goes out of office entirely or takes a like office under another sheriff. The confusion seems to grow out of the fact that the deputy under Pierce and the deputy under Kendall are one and the same person. If the justice executions had been put into the hands of another of Kendall's deputies, and he had called on Parker for the property, and Parker had delivered the horses to him, and he had sold enough to pay the executions, and had returned the remainder to Parker, no one, I think, would doubt the capacity in which Parker would have held that remainder.

But it is said one of the horses was sold upon credit with the consent of the plaintiff. This, we think, cannot affect the liability of the officer to account for the surplus, it having come into his hands before the plaintiff obtained his judgment, and was there when the demand on the execution was made. The character of the sale in no way prejudiced or endangered the rights of the sheriff. The most that can be said of it is that the deputy parted with the possession for a time, but resumed it before the plaintiff had obtained his judgment and established his right to call for it.

We think there was no error in the county court in making the defendant chargeable with the $136.46.

In respect to the Brown money, it appears that after the property was receipted by Pender, Brown proceeded with the consent of the creditors and debtor to convert a portion of the property into lime and then dispose of it. This being done, the officer could not have a return of this property on his receipt. The receiptor cannot return the property, but is bound to pay its value in money, which he proposes to do through Brown, and the officer receives it. It seems very clear that he had the right to do so, and in doing so he acted as the deputy of Pierce, as in regard to the other claim, and that Pierce is responsible as sheriff for his default in not delivering it on legal demand. We think the defendant is properly chargeable with this amount, $117.

We think he is also chargeable for the $11.74, being the amount of the damage to the wagons while in the possession of Parker as such deputy.

This being so, it is immaterial whether Parker charged a larger sum for his fees than he had the right to as against this fund, for after deducting the whole, there is still more in Parker's hands, for which the defendant is liable, than the balance due on the plaintiff's execution, for which the judgment below was rendered.

For the same reason it is not necessary to inquire as to the damage to the barges.

The judgment of the county court is affirmed.